# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE EYE CARE CENTER OF NEW JERSEY, PA, on behalf of itself and all others similarly situated, | **Civil Action** |
| | HON. KEVIN MCNULTY, U.S.D.J. |
| Plaintiff, | |
| -v- | Civil Action No. 2:20-cv-05743-KM-ESK |
| THE HARTFORD FINANCIAL SERVICES GROUP AND TWIN CITY FIRE INSURANCE COMPANY, | ORAL ARGUMENT REQUESTED |
| Defendants. | |

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, PURSUANT TO FED. R. CIV. P. 12(B)(6)

James L. Brochin
STEPTOE & JOHNSON, LLP
1114 Avenue of the Americas
New York, New York 10036
Phone: (212) 378-7503
Fax: (212) 506-3950
jbrochin@steptoe.com

Sarah D. Gordon
Anna M. Stressenger
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Phone: (202) 429-8005
Fax: (202) 429-3902
sgordon@steptoe.com
*Pro Hac Vice Motion Forthcoming*

## **TABLE OF CONTENTS**

Introduction ........................................................................................................1

Statement of Facts ..............................................................................................3

I.    The Policy ....................................................................................................3

II.   Plaintiff's Allegations ................................................................................5

Argument.............................................................................................................6

I.    Governing Legal Standards ........................................................................6

   A.  Motion to Dismiss.................................................................................6

   B.  The Plain and Unambiguous Policy Terms Govern ........................7

II.   The Virus Exclusion Bars Coverage For All of Eye Care's Claims...................8

   A.  Eye Care's Alleged Losses Are Excluded Because They Are Caused by the Coronavirus ...............................................................................................9

   B.  The Governmental Orders Aimed at Slowing the Spread of the Coronavirus Do Not Impact the Applicability of the Virus Exclusion.....................................13

      1.   The Virus Is a Cause of Eye Care's Losses, Which Necessitates the Application of the Virus Exclusion ..............................................................14

      2.   Orders of Civil Authority Are Not Covered Causes of Loss ...............16

Conclusion .........................................................................................................21

## **TABLE OF AUTHORITIES**

**Cases**                                                 **Page(s)**

*Am. Motorists Ins. Co. v. L-C-A Sales Co.*,
713 A.2d 1007 (N.J. 1998) ...................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................6

*Ashrit Realty LLC v. Tower Nat. Ins. Co.*,
No. A-1647-13T4, 2015 WL 248490 (N.J. Super. App. Div. Jan.
20, 2015) ...................................................................................10

*Assurance Co. of Am., Inc. v. Jay-Mar, Inc.*,
38 F. Supp. 2d 349 (D.N.J. 1999).................................................14, 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................6

*Brewer v. U.S. Fire Ins. Co.*,
446 F. App'x 506 (3d Cir. 2011) ........................................................8

*Brunswick Surgical Ctr., LLC, v. CIGNA Healthcare*,
No. 09-cv-5857, 2010 WL 3283541 (D.N.J. Aug. 18, 2010)............................19

*Certain Underwriters at Lloyds of London v. Creagh*,
563 F. App'x 209 (3d Cir. 2014) ........................................................10

*Colella v. State Farm Fire & Cas. Co.*,
407 F. App'x 616 (3d Cir. 2011) ........................................................16

*Essex Ins. Co. v. N.J. Pan African Chamber of Commerce & Indus., Inc.*,
No. A-1178-11T4, 2013 WL 4515934 (N.J. Super. App. Div. Aug.
27, 2013) ...................................................................................19

*Gelman v. State Farm Mut. Auto. Ins. Co.*,
583 F.3d 187 (3d Cir. 2009) ..............................................................6

*Gen. Star Nat. Ins. Co. v. Liberty Mut. Ins. Co.*,
  960 F.2d 377 (3d Cir. 1992) .................................................................7

*Gresko v. Stewart Title Guar. Co.*,
  No. 08-cv-4251, 2009 WL 1010964 (D.N.J. Apr. 15, 2009) .....................8, 9, 13

*Hurst v. Am. Zurich Ins. Co.*,
  No. A-5447-12T4, 2014 WL 6977851 (N.J. Super. App. Div. Dec.
  11, 2014) ...........................................................................................11, 13

*J. Josephson, Inc. v. Crum & Forster Ins. Co.*,
  679 A.2d 1206 (N.J. Super. App. Div. 1996) ......................................19

*Kavesh v. Franklin Mut. Ins.*,
  No. A-5210-13T1, 2015 WL 3603318 (N.J. Super. App. Div. June
  10, 2015) ...........................................................................................11

*Keelen v. QBE Ins. Corp.*,
  No. 13-cv-6941, 2016 WL 1690088 (D.N.J. Apr. 27, 2016) ...........................15

*Lambi v. Am. Mut. Ins. Co.*,
  No. 11-cv-906, 2012 WL 2049915 (W.D. Mo. June 6, 2012) ...........................12

*Longobardi v. Chubb Ins. Co. of N.J.*,
  582 A.2d 1257 (N.J. 1990) ..................................................................8

*Mich. Battery Equip., Inc. v. Emcasco Ins. Co.*,
  892 N.W.2d 456 (Mich. App. 2016)....................................................12

*Oie v. Travelers Indem. Co.*,
  No. 07-cv-5447, 2008 WL 4067308 (D.N.J. Aug. 26, 2008)..............................7

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993) ..............................................................7

*Prime Alliance Grp., Ltd. v. Hartford Fire Ins. Co.*,
  No. 06-cv-22535, 2007 WL 9703576 (S.D. Fla. Oct. 19, 2007)............17, 18, 20

*Restoration Risk Retention Grp., Inc. v. Selective Way Ins. Co.*,
  No. A-1975-10T1, 2011 WL 4808211 (N.J. Super. App. Div. Oct.
  12, 2011) ............................................................................................11

*Rose Ann Int'l, Inc. v. Hartford Ins. Co.*,
   No. 03-cv-698, 2005 WL 8175960 (D.N.J. Aug. 4, 2005)..................................10

*Sentinel Ins. Co., Ltd. v. Monarch Med. Spa, Inc.*,
   105 F. Supp. 3d 464 (E.D. Pa. 2015)....................................................11

*T.H.E. Ins. Co. v. Charles Boyer Children's Tr.*,
   455 F. Supp. 2d 284 (M.D. Pa. 2006)....................................................16

*Um v. Cumberland Ins. Grp.*,
   No. A-0625-06T2, 2008 WL 656805 (N.J. Super. App. Div. Mar.
   13, 2008) .............................................................................15

*Villamil v. Sentinel Ins. Co., Ltd.*,
   356 F. Supp. 3d 418 (D.N.J. 2018)......................................................10

*Wear v. Selective Ins. Co.*,
   190 A.3d 519 (N.J. Super. App. Div. 2018) ..............................................7

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Twin City Fire Insurance Company ("Twin City") respectfully moves this Court to dismiss the Class Action Complaint of Plaintiff The Eye Care Center of New Jersey, PA ("Eye Care") with prejudice.[1]

## INTRODUCTION

Eye Care, an ophthalmologic practice, seeks to recover for purported losses it incurred when it "cease[d] performing non-emergency medical procedures," *see* Compl. ¶ 12, because of the COVID-19 virus and civil authority orders issued "to stop the spread of COVID-19," Compl. ¶ 6.  Eye Care seeks for its property insurer, Twin City, to cover its virus-related losses.

Twin City does not dispute that stay-at-home orders and other measures to slow the spread of the novel coronavirus have upended lives and resulted in broad disruption to the economy.  But the unprecedented fallout from a global pandemic does not provide a basis to override the plain terms of an insurance contract.  Here, Eye Care's policy includes a "'Fungi', Wet Rot, Dry Rot, Bacteria And Virus" Exclusion ("Virus Exclusion") that states Twin City "will not pay for loss or damage caused directly or indirectly by . . . [p]resence, growth, proliferation,

---

[1] On July 10, 2020, the Court so ordered a stipulation dismissing The Hartford Financial Services Group from this case without prejudice. [Dkt. No. 11].

1

spread or any activity of . . . virus." Ex. A at 144.  Further, "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Id.*

The novel coronavirus (SARS-CoV-2) is a "virus" within the meaning of this exclusion, and Plaintiff's alleged business losses were "caused directly or indirectly" by it.  The Complaint makes that clear.  Eye Care includes more than seven pages of allegations in the Complaint related to the nature of the novel coronavirus, the manner in which it spreads, and the orders of civil authority designed to slow its spread.  *See* Compl. at pp. 45-12.  Indeed, Eye Care references "virus" ***thirty-five*** times in the Complaint.  Simply put, there can be no real dispute that the virus is a cause of Eye Care's losses.

Eye Care nonetheless attempts to avoid the Virus Exclusion by arguing that the cause of its losses is not the virus itself but governmental orders aimed at slowing the spread of the virus.  That argument fails for at least two reasons: (1) the virus only needs to be one cause of loss, not the sole cause of loss, for the Virus Exclusion to apply, and the virus most certainly is at least one cause of loss; and (2) orders of civil authorities are not "Covered Causes of Loss" under the terms of the policies and, thus, do not themselves trigger coverage.  Eye Care cannot sidestep the plain fact that their alleged losses are caused by the novel coronavirus, an excluded peril.

2

All six claims for relief are premised on the Policy providing coverage for Eye Care's alleged virus-related business losses.  Counts I, III, and V seek declarations that the policy covers Eye Care's losses, and Counts II, IV, and VI allege breach of contract arising out of Twin City's denial of Eye Care's claim for coverage.  Because the Virus Exclusion operates to bar coverage for these losses, Eye Care's Complaint should be dismissed in its entirety for failure to state a claim on which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Where, as here, the claims of the named Plaintiff fail as a matter of law, the putative class action complaint should be dismissed in its entirety.

## STATEMENT OF FACTS

### I.    The Policy

Twin City issued a Business Owner's Policy bearing No. 13 SBA 101188 DM to Plaintiff for the policy period of January 26, 2020, through January 26, 2021 (the "Policy").  (A true and correct copy of the Policy is attached hereto as Exhibit A.)  The property section of the Policy provides that Twin City "will pay for direct physical loss of or physical damage to Covered Property . . . caused by or resulting from a Covered Cause of Loss."  Ex. A at 34.  The Policy defines "Covered Causes of Loss" as "risks of direct physical loss," unless the loss is excluded or limited in other Policy provisions.  Ex. A at 35.  The Policy also has an

additional coverage for business income under certain terms.  Specifically, it

provides that Twin City:

> will pay for the actual loss of Business Income you sustain
> due to the necessary suspension of your "operations"
> during the "period of restoration."  The suspension must
> be caused by direct physical loss of or physical damage to
> property at the "scheduled premises" . . . caused by or
> resulting from a Covered Cause of Loss.

Ex A. at 43; *see* Compl. ¶ 33.

The Policy also covers "reasonable and necessary Extra Expense you incur

during the 'period of restoration' that you would not have incurred if there had

been no direct physical loss or physical damage to property at the 'scheduled

premises'. . . caused by or resulting from a Covered Cause of Loss."  Ex. A at 43;

Compl. ¶ 35.  The Policy's Civil Authority additional coverage pays for Eye Care's

"actual loss of Business Income" sustained during a 30-day period "when access to

[its] 'scheduled premises' is specifically prohibited by order of a civil authority as

the direct result of a Covered Cause of Loss to property in the immediate area of

[its] 'scheduled premises.'"  Ex. A at 44; Compl. ¶ 40.

The Policy's Virus Exclusion provides that:

> [Twin City] will ***not pay*** for loss or damage caused
> directly or indirectly by any of the following. Such loss or
> damage is excluded regardless of any other cause or event
> that contributes concurrently or in any sequence to the
> loss:

(1) ***Presence, growth, proliferation, spread or any activity of*** "fungi", wet rot, dry rot, bacteria or ***virus***.

Ex. A at 144 (emphasis added).  The Virus Exclusion has two exceptions that are not alleged to apply here.[2]

## II.    Plaintiff's Allegations

Eye Care seeks coverage for business income losses that it allegedly sustained because of the coronavirus/COVID-19.  Specifically, Eye Care alleges that its business was interrupted because of civil authority orders that required non-essential businesses to close or curtail their operations in response to COVID-19 (the "Governmental Orders").  *See, e.g.*, Compl. ¶¶ 6, 7.  The Complaint repeatedly alleges that these Governmental Orders were issued because of COVID-19. Compl. ¶ 7 (orders were issued to "stop the human to human and surface to human spread of the COVID-19 outbreak"); *id.* ¶ 6 (seeking losses "incurred by policyholders for the physical loss and damage to the insured property from measures put in place by the civil authorities to stop the spread of COVID-19 among the population"); *id.* ¶ 74 (losses "stemming from Orders intended to

---

[2] The two exceptions are (1) when the virus results from fire or lightning or (2) when certain limited additional coverage is applicable.  The limited coverage "only applies" if, among other conditions, the virus results from certain specified causes of loss not at issue here (*e.g.*, windstorm, hail, volcanic action) or from an equipment breakdown.  For ease of reference, Twin City has submitted as Exhibit A-1 a standalone copy of the entire Limited Fungi, Bacteria or Virus Coverage form (SS 40 93 07 05) contained in the Policy, along with the definition of "specified cause of loss."

mitigate the COVID-19 pandemic"); *id.* ¶ 90 ("losses incurred by Plaintiff and other Class Members in connection with Closure Orders and the necessary interruption of their businesses stemming from the Orders intended to mitigate the COVID-19 pandemic").

The Complaint asserts six causes of action against Twin City—three counts for a declaratory judgment that its losses are covered under the Business Income (Count I), Civil Authority (Count II), and Extra Expense (Count III) provisions of the Policy, and three counts for breach of contract, alleging that Twin City breached each of these respective provisions (Counts II, IV, and VI).

## ARGUMENT

### I. GOVERNING LEGAL STANDARDS

#### A. Motion to Dismiss

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). If the complaint does not allege facts that allow the court to draw a reasonable inference that the defendant is liable, the complaint lacks facial plausibility and is subject to dismissal. *Gelman v. State Farm Mut. Auto. Ins. Co*., 583 F.3d 187, 190 (3d Cir. 2009).

In deciding a motion to dismiss, a "court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (considering contract between parties attached to defendant's motion to dismiss). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Id.* Here, Plaintiff's entire lawsuit is premised on the Policy; Plaintiff explicitly references the Policy in the Complaint, and repeatedly quotes from the Policy at length. *See, e.g.*, Compl. ¶¶ 33-38, 40-43. The Policy, therefore, is properly considered on a Rule 12(b)(6) motion.

## B.   The Plain and Unambiguous Policy Terms Govern

Under New Jersey law,[3] the interpretation of an insurance policy is a question of law. *See Wear v. Selective Ins. Co.*, 190 A.3d 519, 527 (N.J. Super. App. Div. 2018). "[T]he words of an insurance policy should be given their

---

[3] In a diversity case, the forum state's choice of law rules govern. *Gen. Star Nat. Ins. Co. v. Liberty Mut. Ins. Co.*, 960 F.2d 377, 379 (3d Cir. 1992). Under New Jersey law, when construing contracts of insurance, "the law of the place where the contract is to be performed is the law which governs as to its validity and interpretation." *Oie v. Travelers Indem. Co.*, No. 07-cv-5447, 2008 WL 4067308, at *3 (D.N.J. Aug. 26, 2008) (quoting *London Assurance v. Companhia De Moagens Do Barreiro*, 167 U.S. 149, 160 (1897)). The Policy insures property located and operating in New Jersey. For purposes of this motion, Twin City assumes New Jersey law applies.

ordinary meaning, and in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability." *Longobardi v. Chubb Ins. Co. of N.J.*, 582 A.2d 1257, 1260 (N.J. 1990).  With respect to exclusions in insurance policies, the burden is on the insurer to show that the insured's claim falls within the exclusion; however, exclusions are to be interpreted "according to [their] plain and ordinary meaning, so as not to disregard [the] clear import and intent of [a] policy exclusion." *Am. Motorists Ins. Co. v. L-C-A Sales Co.*, 713 A.2d 1007, 1013 (N.J. 1998) (internal citations omitted).

Courts in this circuit routinely grant motions to dismiss in insurance cases when the plaintiff's allegations fall squarely within the policy's exclusions to coverage.  *See, e.g.*, *Brewer v. U.S. Fire Ins. Co.*, 446 F. App'x 506, 510 (3d Cir. 2011) (affirming dismissal of complaint because the unambiguous policy exclusion applied as a matter of law); *Gresko v. Stewart Title Guar. Co.*, No. 08-cv-4251, 2009 WL 1010964, at *3 (D.N.J. Apr. 15, 2009) (dismissing insured's complaint based on the clear language of exclusion in the policy).

## II.  THE VIRUS EXCLUSION BARS COVERAGE FOR ALL OF EYE CARE'S CLAIMS

Eye Care has not stated a claim upon which relief can be granted, because the Virus Exclusion in the Policy removes any possibility of coverage for Eye Care's virus-related business losses.  Therefore, Eye Care cannot establish coverage and its claims should be dismissed.

A.   **Eye Care's Alleged Losses Are Excluded Because They Are Caused by the Coronavirus**

The Virus Exclusion unambiguously bars coverage for Eye Care's claims. The Policy provides that Twin City "will not pay for loss or damage *caused directly or indirectly by the presence, growth, proliferation, spread or any activity of . . . virus*." Ex. A at 144 (emphasis added). This Exclusion applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Id.*

Eye Care's allegations fall squarely within the exclusion. It alleges that the coronavirus is a virus, *see, e.g.*, Compl. ¶¶ 16-29, and that the Governmental Orders that allegedly caused its losses were put in place to "prevent", "stop," "reduce" or "minimize" the "spread of COVID-19," *see* Compl. ¶¶ 6, 28, 42, 63. Eye Care, in other words, specifically alleges that its losses were caused by the "spread" of the novel coronavirus.

Although Eye Care attempts to avoid it (*see* Part III.B. below), the Complaint makes clear that the virus is the direct or indirect cause of Eye Care's losses. The Governmental Orders that Eye Care asserts are the cause of its loss were put in place solely to reduce or limit the spread of the virus. They are not causally distinct from the virus. That is, Eye Care would not have been closed to non-emergency procedures but for the existence of the coronavirus. Accordingly, the claims fall squarely within the Virus Exclusion and there is no coverage.

The Third Circuit faced a similar issue in *Certain Underwriters at Lloyds of London v. Creagh*, 563 F. App'x 209, 211 (3d Cir. 2014) (Pennsylvania law). There, the plaintiff attempted to avoid a microorganism exclusion by arguing that its damages arose from remediation work aimed at removing a smell, not bacteria, because bacteria losses due to the bacteria were excluded. *Id.* The court rejected the argument: "Under the microorganism exclusion, it suffices that the smell and other damages 'directly or indirectly [arose] out of' the bacteria, which caused the fluid to escape the body and grew in the fluid after it left the body." *Id.* Just as in *Creagh*, "it suffices" that the Governmental Orders here arose directly or indirectly out of the virus, and there is no coverage under the Policy.

Courts applying New Jersey law routinely conclude that unambiguous exclusions must be enforced to bar coverage. *See, e.g.*, *Villamil v. Sentinel Ins. Co., Ltd.*, 356 F. Supp. 3d 418, 428 (D.N.J. 2018) (exclusion for flood water in property policy that contained anti-concurrent and anti-sequential clauses was unambiguous and applied to bar coverage); *Rose Ann Int'l, Inc. v. Hartford Ins. Co.*, No. 03-cv-698, 2005 WL 8175960, at *3 (D.N.J. Aug. 4, 2005) (holding that flood and surface water exclusion in property policy was unambiguous and excluded insured's loss); *see also Ashrit Realty LLC v. Tower Nat. Ins. Co.*, No. A-1647-13T4, 2015 WL 248490, at *5 (N.J. Super. App. Div. Jan. 20, 2015)

(affirming trial court's holding that "the anti-sequential clause and the exclusionary language for earth movement and water damage did not cover plaintiffs' loss").

Exclusions applying to mold, fungi, and other microorganisms are no different—courts in this state regularly apply unambiguous exclusions to exclude coverage. *See, e.g.*, *Kavesh v. Franklin Mut. Ins*., No. A-5210-13T1, 2015 WL 3603318, at *1, *3 (N.J. Super. App. Div. June 10, 2015) (interpreting a similar "[d]ry or wet rot; bacterium, fungus, mildew, mold, spores, or other natural growth" exclusion and holding that the exclusion was unambiguous and applied to bar coverage);[4] *Hurst v. Am. Zurich Ins. Co.*, No. A-5447-12T4, 2014 WL 6977851, at *4 (N.J. Super. App. Div. Dec. 11, 2014) (unambiguous fungus exclusion applied); *Restoration Risk Retention Grp., Inc. v. Selective Way Ins. Co*., No. A-1975-10T1, 2011 WL 4808211, at *3-5 (N.J. Super. App. Div. Oct. 12, 2011) (holding that a provision excluding coverage for property damage "which would not have occurred, in whole or in part, but for the . . . existence of, or presence of any 'fungi' or bacteria . . . regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage" applied to losses from mold remediation).[5]

---

[4] Like the Policy in this case, there were exceptions to the exclusion, but the court held that these exceptions did not apply. *Id.* at *3.

[5] Other courts are in accord. *See, e.g.*, *Sentinel Ins. Co., Ltd. v. Monarch Med. Spa, Inc.*, 105 F. Supp. 3d 464 (E.D. Pa. 2015) (enforcing exclusion for fungi, bacteria

There appear to be no New Jersey cases interpreting the specific language in the Virus Exclusion. A Michigan appellate court, however, recently interpreted a nearly identical "'Fungus', Wet Rot, Dry Rot And Bacteria" exclusion and held that its plain language barred coverage for losses from wet rot. *See Mich. Battery Equip., Inc. v. Emcasco Ins. Co.*, 892 N.W.2d 456, 460 (Mich. App. 2016). The court reasoned that "the policy plainly identifies the risks that [the insurer] was willing to, and did contract to cover, and unfortunately for [the insured], wet rot is not one of those risks." *Id*.

Moreover, on or about July 1, 2020, another Michigan court addressed coverage for COVID-19 business income claims just like those at issue here. *See Gavrilides Mgmt. Co. vs. Mich. Ins. Co.*, No. 20-258-CB-C30 (Mich. Cir. Ct., Ingham Cty.).[6] The court in *Gavrilides* concluded that the plaintiff could not demonstrate any direct physical loss to its property but, even if it had, the

---

and virus against claims for bacterial infections resulting from certain surgeries); *Lambi v. Am. Mut. Ins. Co.*, No. 11-cv-906, 2012 WL 2049915, at *4-5 (W.D. Mo. June 6, 2012) (communicable disease exclusion in homeowners' policy barred insurance coverage for virus claims), *aff'd*, 498 F. App'x 655 (8th Cir. 2013).

[6] Oral Argument and Decision on Motion to Dismiss, *Gavrilides Mgmt. Co. vs. Mich. Ins. Co.*, Case No. 20-258-CB-C30 (Mich. Cir. Ct., Ingham Cty., July 1, 2020), https://www.youtube.com/watch?v=Dsy4pA5NoPw&feature=youtu.be; *see also* Ex. B. The court has not yet issued a written order, but the oral argument and decision from the bench were live-streamed and are available at the YouTube link. The transcript is also attached hereto as Exhibit B.

unambiguous virus exclusion would bar coverage.  *See* Ex. B at 22 ("But, there is a virus exclusion that would also apply.").

This same reasoning applies here.  The meaning of the Virus Exclusion is clear:  It bars coverage because virus is not one of the risks that Twin City agreed to cover, except in limited circumstances not alleged or present here.  Because the Virus Exclusion applies, Eye Care's declaratory judgment and breach of contract claims fail and should be dismissed.  *See Hurst*, 2014 WL 6977851, at *5 (affirming dismissal of declaratory judgment action when unambiguous terms of the insurance policy barred coverage); *Gresko v. Stewart Title Guar. Co.*, No. 08-cv-4251, 2009 WL 1010964, at *3 (D.N.J. Apr. 15, 2009) (breach of contract claimed dismissed where insurance policy did not cover insured's losses).

### B. The Governmental Orders Aimed at Slowing the Spread of the Coronavirus Do Not Impact the Applicability of the Virus Exclusion

Eye Care nonetheless attempts to plead around the Virus Exclusion by alleging that the cause of its loss is not the virus itself, but the Governmental Orders aimed at slowing the spread of the virus.  That argument fails for at least two reasons:  (1) at least one cause of Eye Care's losses is the virus, and that is sufficient for the Virus Exclusion to apply, and (2) orders of civil authority are not Covered Causes of Loss.

### 1. The Virus Is a Cause of Eye Care's Losses, Which Necessitates the Application of the Virus Exclusion

By its plain terms, the Virus Exclusion applies so long as "virus" is a cause of loss; it need not be the sole cause of loss. The Policy provides: "Such loss or damage is excluded ***regardless of any other cause or event that contributes concurrently or in any sequence to the loss***." Ex. A at 144  (emphasis added). The purpose of this language, referred to as an "anti-concurrent causation clause," is to provide certainty to the parties as to coverage when there are multiple alleged causes of a loss. So long as one contributing cause is excluded, this anti-concurrent causation clause ensures the loss is not covered.

The Complaint ignores this language and instead alleges that the Virus Exclusion does not apply, because "the efficient proximate cause" of Eye Care's losses was precautionary measures taken by governments to prevent the spread of COVID-19. Compl. ¶ 42. Eye Care's attempt to rewrite the Policy—and New Jersey law—misses the mark.

New Jersey courts typically use the efficient proximate cause rule to assess coverage where an insured's loss has two or more causes—one covered under the policy and the other excluded. *See Assurance Co. of Am., Inc. v. Jay-Mar, Inc.*, 38 F. Supp. 2d 349, 354 (D.N.J. 1999).  For the reasons explained in Part B.2 below, however, the Governmental Orders are ***not*** a Covered Cause of Loss and therefore the doctrine does not apply. Further, even if the Governmental Orders could be

14

considered a Covered Cause of Loss, the anti-concurrent causation clause precludes application of the efficient proximate cause doctrine.

This district first addressed this question in *Assurance Co. of America, Inc. v. Jay-Mar, Inc*., 38 F. Supp. 2d 349 (D.N.J. 1999). In that case, the insurance policy contained an exclusion for losses caused by surface water or flood with an anti-concurrent causation clause identical to the one in the Policy. *Id.* at 352. The insured argued that the anti-concurrent causation clause violated public policy, and therefore that the court should apply the efficient proximate cause doctrine instead. *Id.* at 352-53. The court rejected this argument and enforced the unambiguous terms of the exclusion. It held that if the insured's "loss was caused in any part by flood or surface water, it may not recover from [the insurer]." *Id.* at 354. The court also recognized that the majority of jurisdictions "have found that exclusionary language designed to avoid the 'efficient proximate cause' doctrine is enforceable." *Id.* (collecting cases).

Subsequent decisions, both in this court and in the Appellate Division, have reinforced the holding in *Jay-Mar*. *See, e.g.*, *Keelen v. QBE Ins. Corp*., No. 13-cv-6941, 2016 WL 1690088, at *3 (D.N.J. Apr. 27, 2016) (holding that exclusion containing an identical anti-concurrent causation clause applied to bar coverage); *Um v. Cumberland Ins. Grp.*, No. A-0625-06T2, 2008 WL 656805, at *5 (N.J. Super. App. Div. Mar. 13, 2008) ("Although the first in the sequence of events was

15

a covered loss, the insured was unable to recover because the contract specifically provided that there would 'be no coverage for loss due to sequential causes even where the first or the last cause is an included cause of loss.'"); *see also Colella v. State Farm Fire & Cas. Co.*, 407 F. App'x 616, 622 (3d Cir. 2011) (anti-concurrent causation clause in insurance policy "negates the application" of the state's causation law) (applying Pennsylvania law); *T.H.E. Ins. Co. v. Charles Boyer Children's Tr.*, 455 F. Supp. 2d 284, 288 (M.D. Pa. 2006), *aff'd,* 269 F. App'x 220, 223 (3d Cir. 2008) (whether a covered peril contributed to loss was irrelevant in light of anti-concurrent causation language) (Pennsylvania law).

Because the coronavirus undisputedly is *a* cause of Eye Care's losses, there is no coverage under the Policy.

### 2.  Orders of Civil Authority Are Not Covered Causes of Loss

Eye Care's efficient proximate cause argument also fails because it is based on a false premise.  The efficient proximate cause doctrine applies when there are two causes of loss (one covered and one not), and the court must determine whether the insured's losses were caused by the covered peril or the excluded peril.  Here, there is only one peril:  the virus.

Eye Care, of course, contends that the Governmental Orders also constitute a peril.  *See* Compl. ¶¶ 41, 42.  Governmental Orders, however, are not a peril as they do not constitute a "Covered Cause of Loss" under the Policy and, therefore,

cannot trigger coverage under any of the three provisions Plaintiff identifies—

Business Income, Civil Authority, or Extra Expense. *See* Ex. A at 34, 43-44.

A federal district court in Florida addressed this issue and expressly rejected

a policyholder's attempt to characterize an order of civil authority as a risk of

direct physical loss. *See Prime Alliance Grp., Ltd. v. Hartford Fire Ins. Co*., No.

06-cv-22535, 2007 WL 9703576 (S.D. Fla. Oct. 19, 2007).  There, the

policyholder suffered losses as a result of an order to evacuate issued in connection

with Hurricane Francis. *Id*. at *1.  The losses did not exceed the policy's

deductible for "windstorm," but did exceed the "standard" deductible. *Id.* at *1-2.

Thus, a key issue for the court was whether the cause of loss was "windstorm" or a

peril that would be subject to the standard deductible.  The policyholder asserted

"that the windstorm deductible is inapplicable to their claim because their business

interruption losses were caused not by a windstorm but by an order of civil

authority, a separate peril." *Id.* at *3.  The court rejected that argument:  "No

matter how much Plaintiffs would like to believe that interruption by civil or

military authority is a separately listed named peril, the structure and language of

the policy, when read as a whole, says otherwise." *Id.* at *4 (internal quotation

marks omitted).  The court concluded:  "The order of civil authority cannot in any

reasonable manner be construed as a 'peril,'" where "perils insured against"

included "all risk of direct physical loss." *Id*. at *1, *4.

Here, as in *Prime Alliance*, the entire structure and wording of the Policy makes clear that Civil Authority is not a peril or a Covered Cause of Loss, but instead is an *extension* of coverage in certain well-defined and limited circumstances.[7]  Thus, the Policy defines "Covered Cause of Loss" as "risks of direct physical loss" (unless the loss is otherwise excluded or limited by the terms of the policy).  Ex. A at 35.  The Governmental Orders that purportedly prohibit access to Eye Care's property are clearly not a "risk of direct physical loss."  Rather, the Orders are governmental measures taken to avoid or mitigate the effects of a transmissible virus.  *See* Compl. ¶ 42 (Governmental Orders "were precautionary measures taken by their respective States to prevent the spread of COVID-19 in the future").

The purpose of Civil Authority coverage is to **extend** coverage to a specific situation that would not otherwise be covered under the policy.  The "extended" coverage applies *only* "when access to" Eye Care's schedule premises "is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of" Eye Care's premises.  Ex. A at 44.  That is, the Civil Authority provision applies when there is direct physical loss or damage to property **other than Eye Care's property**.

---

[7] The provision states, "This insurance *is extended to apply* to the actual loss of Business Income you sustain . . . ."  Ex. A at 44 (emphasis added).

Nothing in the Policy suggests that this limited extension of coverage changes the scope of the definition of "Covered Cause of Loss." For example, nothing in the Civil Authority provision mentions, much less changes, the requirement that a Covered Cause of Loss must be a "risk of direct physical loss or damage." The "Special Property Coverage Form" provides "Coverage" only for "direct physical loss of or physical damage to Covered Property . . . *caused by or resulting from a Covered Cause of Loss*," *i.e.*, risks of direct physical loss, unless excluded or limited. *See* Ex. A at 34, 35 (emphasis added).

Not only is Eye Care's argument inconsistent with the plain wording of the Policy, it would render policy provisions essentially meaningless, which New Jersey law does not allow. *See Essex Ins. Co. v. N.J. Pan African Chamber of Commerce & Indus., Inc*., No. A-1178-11T4, 2013 WL 4515934, at *7 (N.J. Super. App. Div. Aug. 27, 2013) ("[I]n construing the terms of an insurance contract, we will not read one policy provision in isolation when doing so would render another provision meaningless.") (internal citations and alteration omitted); *J. Josephson, Inc. v. Crum & Forster Ins. Co.*, 679 A.2d 1206, 1230 (N.J. Super. App. Div. 1996) (applying the "fundamental" principle "that an insurance contract must be interpreted by considering the agreement as a whole, and whenever possible, meaning must be given to all of its parts"); *see also Brunswick Surgical Ctr., LLC, v. CIGNA Healthcare*, No. 09-cv-5857, 2010 WL 3283541, at *6 (D.N.J. Aug. 18,

2010) (declining to adopt insured's interpretation of insurance policy in such a way that would render certain policy provisions "superfluous and redundant").

Treating a governmental order as a Covered Cause of Loss would render the "Additional Coverage" for "Civil Authority" superfluous. It would also eliminate the requirement that "Business Income" coverage[8] be premised on the risk of direct physical loss. Indeed, if a governmental order were a Covered Cause of Loss, there would be no need for an "***Additional*** Coverage" for "Civil Authority" that ***extends*** coverage; it would already exist under the Business Income coverage. *See* Ex. A at 44.

Simply put, a civil authority order "cannot in any reasonable manner" be construed as a Covered Cause of Loss under the plain terms of the Policy. *See Prime Alliance*, 2007 WL 9703576, at *4. Thus, there is only one peril that has led to Eye Care's loss—the coronavirus—and it is excluded. Accordingly, there is no coverage under the Policy for any of Eye Care's claims, and the Complaint should be dismissed in its entirety.

---

[8] As Plaintiff alleges (*see* Compl. ¶ 33) and as detailed above (*see* Statement of Facts), "Business Income" is an "Additional Coverage" in the Policy. It provides coverage for loss sustained during a suspension of Eye Care's operations, provided the suspension is "caused by direct physical loss of or physical damage to" Eye Care's covered property that is "caused by or resulting from a Covered Cause of Loss", *i.e.*, risks of direct physical loss. That is, if Eye Care's business is suspended because of what otherwise would be covered under the "Coverage" provision, Twin City will pay for those business income losses (subject to the Policy's other terms, conditions and limitations).

## **CONCLUSION**

For the reasons set forth above and others appearing on the record, this Court should grant Defendant's Motion to Dismiss Eye Care's Complaint with prejudice.

Dated: July 14, 2020

Respectfully submitted,

STEPTOE & JOHNSON LLP

By: /s/ James L. Brochin

James L. Brochin
1114 Avenue of the Americas
New York, New York 10036
Phone: (212) 378-7503
Fax: (212) 506-3950
jbrochin@steptoe.com

Sarah D. Gordon
Anna Stressenger
1330 Connecticut Avenue NW
Washington, District of Columbia 20036
Phone: (202) 429-3000
Fax: (202) 429-3902
sgordon@steptoe.com
*Pro Hac Vice Forthcoming*

Alan E. Schoenfeld
Ryan M. Chabot
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007

Tel. (212) 230-8800
Fax: (212) 230-8888
alan.schoenfeld@wilmerhale.com
ryan.chabot@wilmerhale.com

*Attorneys for Defendant Twin City Fire
Insurance Company*

CERTIFICATION OF SERVICE

I, James L. Brochin, certify that a copy of this brief and accompanying

exhibits were served electronically by CM/ECF on July 14, 2020 upon:

James E. Cecchi, Esquire
Carella, Byrne, Cecchi, Brody & Angello
5 Becker Farm Rd.
Roseland, NJ 07068
Phone: (973) 994-1700
Fax: (973) 994-1744
jcecchi@carellabyrne.com

Christopher A. Seeger
Seeger Weiss LLP
55 Challenger Road
6th Floor
Ridgefield Park, NJ 07660
Phone: (973) 639-9100
Fax: (973) 639-9393
cseeger@seegerweiss.com

s/ James L. Brochin
James L. Brochin