UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **THE EYE CARE CENTER OF NEW JERSEY, PA**, on behalf of itself and all others similarly situated,<br><br>    **Plaintiff**,<br><br>    v.<br><br>**TWIN CITY FIRE INSURANCE COMPANY**,<br><br>    **Defendant.** | Civ. No. 20-05743 (KM) (ESK)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

    As COVID-19 and responsive measures pause normal business operations, businesses have turned to their commercial insurers, seeking coverage for business interruption losses. Plaintiff here, the Eye Care Center of New Jersey, an ophthalmologic practice, sought coverage from Twin City Fire Insurance Co., its insurer. Twin City denied coverage. Eye Care now sues to recover its own allegedly covered losses, and also seeks to represent a nationwide class of insureds with the same policy. Twin City moves to dismiss the individual and class claims. (DE 28, 27.)[1] For the following reasons, the motions to dismiss are **GRANTED**.

---

[1] Certain citations to the record are abbreviated as follows:

    DE = docket entry

    Am. Compl. = Amended Complaint (DE 22)

    Policy = Insurance Policy No. 13 SBA IO1188 (DE 28-2)

    Mot. = Twin City's Brief in Support of its Motion to Dismiss the Individual Claims (DE 28-1)

    Opp. = Eye Care's Opposition to Twin City's Motion to Dismiss (DE 35)

I. **BACKGROUND**

Following its emergence in December 2019, the novel coronavirus COVID-19 spread throughout the world. (Am. Compl. ¶¶ 19, 21.) In response, governments ordered businesses to close or restrict their operations. (*Id.* ¶¶ 30–31.) For medical practices, government orders prohibited non-urgent procedures. (*Id.* ¶ 30.) Complying, Eye Care ceased performing such procedures. (*Id.* ¶ 15.)

To recoup its losses, Eye Care sought to recover on a commercial insurance policy it had with Twin City. (*Id.* ¶ 32.) That policy is standard and used with businesses nationwide. (*Id.* ¶¶ 33–34.) The policy generally provides that Twin City "will pay for direct physical loss of or physical damage to Covered Property . . . caused by or resulting from a Covered Cause of Loss." (Policy at 34.) "Covered Cause of Loss" is defined to include "risks of direct physical loss" unless the loss is otherwise excluded. (*Id.* at 35 (capitalization altered).)

Then, in a section called "Additional Coverages," the policy explains what exactly Twin City will pay for. (*Id.* at 36.) The policy will pay for lost "Business Income" during suspension of operations, as well as "Extra Expenses" that a business would not have otherwise incurred. (*Id.* at 43.) The policy also makes explicit that "[t]his insurance is extended to apply to the actual loss of Business Income you sustain when access to your [property] is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss." (*Id.* at 44.)

In addition, however, the policy excludes several occurrences from coverage. One exclusion relates specifically to viruses:

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:
>
> > (1) Presence, growth, proliferation, spread or any activity of . . . virus.

(*Id.* at 144.) Relying on this exclusion, Twin City denied Eye Care's claim for losses sustained as a result of COVID-19 restrictions. (Am. Compl. ¶ 45.)

In response, Eye Care sued Twin City. Eye Care brings three breach of contract claims, asserting that Twin City breached its obligations to provide coverage under the (a) business income, (b) civil authority, and (c) extra expense provisions. (*Id.*, Counts 2, 4, 6.) Eye Care also seeks declaratory judgments that Twin City must cover claims under those three provisions for businesses closed due to COVID-19 measures. (*Id.*, Counts 1, 3, 5.) Eye Care brings all its claims individually and behalf of a proposed class of businesses with the same policy that have suffered losses due to COVID-19-related closures. (*Id.* ¶¶ 50–51.) Twin City moves to dismiss both the individual claims (DE 28) and the class claims (DE 27).

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations but "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept facts in the complaint as true and draw reasonable inferences in the plaintiff's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc).

## III.   DISCUSSION

Whether Eye Care's losses are covered under the policy is a question of contract interpretation. *Cypress Point Condo. Ass'n, Inc. v. Adria Towers, LLC*,

143 A.3d 273, 280 (N.J. 2016).[2] I apply the plain language of the policy. *Id.* Although "exclusions are ordinarily strictly construed against the insurer," that interpretive principle does not permit a court to disregard an exclusion's plain meaning. *Flomerfelt v. Cardiello*, 997 A.2d 991, 997 (N.J. 2010). When an exclusion clearly applies to a complaint's allegations, a court may dismiss the complaint. *E.g.*, *Brewer v. U.S. Fire Ins. Co.*, 446 F. App'x 506, 510 (3d Cir. 2011).

### A. The Virus Exclusion

The virus exclusion applies in blanket fashion to all forms of coverage in the policy. If applicable, then, it will dispose of this case. The exclusion bars coverage for losses "caused directly or indirectly by" the "[p]resence, growth, proliferation, spread or any activity of . . . virus." (Policy at 144.) Eye Care's losses were "caused directly or indirectly" by COVID-19; Eye Care curtailed its operations in compliance with governmental COVID-based restrictions. But for the "spread" of COVID-19, governments would not have issued closure orders, and Eye Care would not have stopped performing non-emergency procedures.

Other courts in New Jersey have adopted that straightforward reading. In one case interpreting a near-identical virus exclusion, Judge Kugler explained that "[t]here is no doubt that COVID-19, a virus, caused Governor Murphy to issue the Executive Order mandating closure of Plaintiff's restaurant." *N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, --- F. Supp. 3d ----, ----, Civ. No. 20-05289, 2020 WL 6501722, at *3 (D.N.J. Nov. 5, 2020). In two other cases, Judge Wigenton held likewise. *Boulevard Carroll Ent. Grp., Inc. v. Fireman's Fund Ins. Co.*, Civ. No. 20-11771, 2020 WL 7338081, at *2 (D.N.J. Dec. 14, 2020), *appeal docketed*, No. 21-1061 (3d Cir. Jan. 12, 2021); *7th Inning Stretch LLC v. Arch Ins. Co.*, Civ. No. 20-08161, slip op. at *4 (D.N.J. Jan. 19, 2021), DE 54. Finally, the New Jersey Superior Court held that it was a "clear and

---

[2] The parties agree that New Jersey law applies. (Mot. at 8 n.2; Opp. at 3.) *See Pre-Settlement Fin., LLC v. Ellis*, Civ. No. 18-06339, 2020 WL 5743036, at *4 n.3 (D.N.J. Sept. 24, 2020) (reliance on a particular state's law in the parties' briefs is sufficient to establish choice of law (citation omitted)).

4

unmistakable conclusion" that a similar virus exclusion applied to business losses due to COVID-19. *Mac Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co.*, No. L-02629, slip op. at *16 (N.J. Super. Ct. Law Div. Nov. 5, 2020) (provided at DE 47-2). The Third Circuit, New Jersey Supreme Court, and the Appellate Division have not spoken on this issue. In the meantime, opinions of this Court and one trial-level New Jersey court provide strong persuasive authority.

Looking farther afield, I see that cases like Eye Care's have proliferated across the country, and that nearly every court to address the issue has barred coverage based on similarly worded virus exclusions. *E.g.*, *N&S*, 2020 WL 6501722, at *4 (collecting cases).[3] "Lacking more specific guidance, a federal court may identify a majority view and predict that a state supreme court would adopt it." *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, Civ. No. 18-10675, 2021 WL 303030, at *4 (D.N.J. Jan. 29, 2021) (citation omitted).

The weight of authority supports my plain-text reading, and I predict that the New Jersey Supreme Court would adopt it.

### B. Eye Care's Counterarguments

Eye Care offers two arguments in support of its positions that the virus exclusion nevertheless does not apply. Neither is persuasive.

First, Eye Care argues that the exclusion's language connotes that the virus must be physically present at the business premises. Eye Care points to terms like "presence" and "growth" as well as the fact that the other excluded occurrences in this section (fungi, wet rot, dry rot, and bacteria) "could only harm the insured's property if they were physically present." (Opp. at 5.)

But there is no textual limitation indicating that the virus must be present at the property. Rather, the clause excludes coverage for losses caused by the spread of viruses generally, and adds that it extends to both direct and indirect causation. Eye Care's resort to general canons of interpretation is a diversion from the task at hand; "[w]e need not call upon canons of

---

[3] I have reviewed the parties' notices of supplemental authority. (DE 38, 39, 40, 47, 48, 50, 51, 52, 55, 56.)

interpretation for guidance, however, because the [] exclusion is unambiguous as applied here." *Certain Underwriters at Lloyds of London v. Creagh*, 563 F. App'x 209, 211 (3d Cir. 2014); *see also Flomerfelt*, 997 A.2d at 997 ("[W]e do not suggest that any far-fetched interpretation of a policy exclusion will be sufficient to create an ambiguity requiring coverage . . . . Rather, courts must evaluate whether, utilizing a fair interpretation of the language, it is ambiguous." (quotation marks and citation omitted)). There is not a sufficient textual basis for Eye Care's argument that the virus must be physically present. *N&S*, 2020 WL 6501722, at *3 (rejecting similar argument).

Second, Eye Care argues that the government orders, not the virus itself, should be considered the proximate cause of its losses. For support, Eye Care invokes the "Appleman Rule," a doctrine in insurance law providing that "if an exclusion 'bars coverage for losses *caused by* a particular peril, the exclusion applies *only if* the excluded peril was the efficient proximate cause of the loss." *N.J. Transit Corp. v. Certain Underwriters at Lloyd's London*, 221 A.3d 1180, 1192 (N.J. Super. Ct. App. Div. 2019) (quoting *Zurich Am. Ins. Co. v. Keating Bldg. Corp.*, 513 F. Supp. 2d 55, 70 (D.N.J. 2007)), *aff'd on other grounds*, --- A.3d ---, 2021 WL 261989 (N.J. Jan. 27, 2021) (per curiam). In other words, even though a virus was the first link in the causal chain, the last link before Eye Care suffered losses was the closure orders, so Eye Care can still recover. *See Auto Lenders Acceptance Corp. v. Genteli Ford, Inc.*, 854 A.2d 378, 385 (N.J. 2004) ("[R]ecovery may be allowed where the insured risk was the last step in the chain of causation set in motion by an uninsured peril . . . ." (citation omitted)).

But parties may contract around the Appleman Rule. *Simonetti v. Selective Ins. Co.*, 859 A.2d 694, 669–700 (N.J. Super. Ct. App. Div. 2004); *Assur. Co. of Am., Inc. v. Jay-Mar, Inc.*, 38 F. Supp. 2d 349, 352–54 (D.N.J. 1999). Eye Care and Twin City did so here because the virus exclusion says that (1) coverage does not apply if losses are caused "directly or *indirectly* by" a virus, and (2) the exclusion applies "regardless of any other cause or event that

6

contributes concurrently or in any sequence to the loss." (Policy at 144 (emphasis added).) Courts have read such language to mean that losses from COVID-19 closures are covered by the virus exclusion because COVID-19 could still be considered an indirect or sequential cause. *N&S*, 2020 WL 6501722, at *4 (collecting cases). I am persuaded by that reasoning, and see no reason to depart from the case-law consensus.[4]

\* \* \*

I conclude that the virus exclusion applies to bar Eye Care's recovery, and Eye Care's arguments to the contrary are unpersuasive. So I will grant Twin City's motion to dismiss the individuals claims for failure to state a claim. Because Eye Care fails to state an individual claim, its claims on behalf of a class fail too. *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1169 (3d Cir. 1987) ("[T]o be a class representative on a particular claim, the plaintiff himself must have a cause of action on that claim."); *see Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992) ("[W]hen claims of the named plaintiffs become moot before class certification, dismissal of the action is required."). So I will also grant Twin City's motion to dismiss the class-based claims.

---

[4] Eye Care relies on *Elegant Massage, LLC v. State Farm Mutual Automobile Insurance Co.*, which, in my view, is the only case that analyzed the virus exclusion and came to a different conclusion. --- F. Supp. 3d ----, ----, No. 2:20-cv-265, 2020 WL 7249624, at *12 (E.D. Va. Dec. 9, 2020). I find *Elegant Massage* distinguishable. Most prominently, that court found that Virginia law was unclear as to whether an exclusion with a broad causation clause is enforceable; New Jersey law, in contrast, is clear that such clauses are valid. Moreover, other federal courts have tagged *Elegant Massage* as a "notable outlier" and have found it unpersuasive. *Bluegrass, LLC v. State Auto. Mut. Ins. Co.*, No. 2:20-cv-00414, 2021 WL 42050, at *4 (S.D. W. Va. Jan. 5, 2021); *LJ New Haven LLC v. AmGUARD Ins. Co.*, --- F. Supp. 3d ----, ----, No. 3:20-cv-00751, 2020 WL 7495622, at *7 n.7 (D. Conn. Dec. 21, 2020).

## IV.   CONCLUSION

For the reasons set forth above, the motions to dismiss are granted. This is an initial dismissal. Nevertheless, because the dismissal is based on the court's reading of the plain language of the policy, amendment would be futile. I will therefore take the less usual course of dismissing with prejudice, rendering this a final and appealable decision. Any party that believes the Court has overlooked a substantial issue of fact of law, of course, may move for reconsideration.

A separate order will issue.

Dated: February 8, 2021

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**